The Honorable, the Judges of the United States Court of Appeals for the 8th Circuit. Court is now in session. Okay, well, we only have one case for argument this afternoon. I think we'll dispense with the reading of the calendar. And so let's get started. We'll hear from the appellant. May it please the Court, Brian Morrison for the appellant. And let me just say, Your Honors, I tried three times to be with you today on an airplane, but Delta would not cooperate. So I apologize for requiring this setting. I'd like to reserve three minutes for rebuttal. Now on your rebuttal time, you'll need to keep track of your time and stop to allow you the rebuttal time. We won't interrupt you. I understand, Your Honor. The clerk warned me. I'll do my best. All right, you may proceed. In Bruin, the Supreme Court held that ordinary law-abiding citizens have the Second Amendment right to carry a firearm in public for self-defense. It also established the test for all Second Amendment cases. Quote, the standard for applying the Second Amendment is as follows. When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the nation's historic traditional firearm regulations. After the government meets its burden, quote, only then, and if you could see my notes, you'd see I have only then italicized, bolded, and underlined. Only after the government meets its burden may a court conclude that the Second Amendment does not protect the individual's conduct. Then the court ruled in Rahimi that when the government wants to disarm someone it claims is a danger to the public, that individual must be found by a court to pose a credible threat to the physical safety of another before he is temporarily disarmed. And when applying Bruin and Rahimi, this court established the principle in Worth, Perez, Veasley, and Cooper that denying the Second Amendment rights of a defined category of people based only on the suggestion that they might sometimes be dangerous without more is insufficient for categorical disarmament. Mr. Morrison, I have kind of a threshold question to ask you. Was this claim pled as a facial challenge or an as-applied challenge? And does the appeal raise an as-applied challenge? Your Honor, it was pled as both. If you look at page 23 of the joint appendix, you'll find our complaint. And in paragraphs 87 and 88, you'll see that Mr. Johnson brought both a facial and an as-applied challenge. It's just that they're black and white against only the reciprocity statute. But it doesn't really matter because the Bruin analysis is the same under both types of challenges. And any individual relief Johnson obtains also applies to all individuals with unrecognized out-of-state permits. Mr. Morrison, I'd like to maybe kind of cut to the chase a little bit of a question I have. And so you don't challenge the constitutionality of Minnesota's permitting statute. And so if Minnesota can require all of its residents to get a permit without violating the Second Amendment, which I think you've conceded, why would it violate the Second Amendment to require others to get that same permit? What the Supreme Court has held in both Bruin and Rahimi, and I guess to some degree when this court followed it in the cases I mentioned, is an individual can only be disarmed if that person has been proven to be a danger to the public. The people with out-of-state unrecognized firearm licenses have already proven to be law-abiding citizens. The states on the list and off the list all require you to fill out basic information on a form, submit to a background check, make sure that you can have a firearm under federal or state law. Some require training, some don't. But that's the case with states on the list as well, most notably Texas, who got on the list even though it's a constitutional carry state and doesn't require training. But isn't reciprocity different than restricting the carrying of firearms? In other words, does Minnesota have to have a reciprocity statute under Bruin? I believe that the fundamental right you have under the Second Amendment is if you are a law-abiding citizen, you have the right to carry a firearm in public for self-defense. Then yes, once you've established that you are a law-abiding citizen, you have to recognize that right. Hold on, wait a minute. It is your position that having conceded that the Minnesota permitting process is appropriate for Minnesota residents, that in a situation where it's just reciprocity, that Minnesota must enact a statute that allows for reciprocity, or else they're in violation of the Second Amendment? And do you have a case that says that anywhere in the world? Your Honor, I don't have a case that says that quote-unquote. But if you can only disarm people once they've proven to be a danger, and if the fundamental principle of the Second Amendment is law-abiding citizens have a right to carry a firearm in public for self-defense. So you have greater rights as a non-resident than as a resident? No, Your Honor, I wouldn't say you have greater rights. The Second Amendment applies wherever you go. And to make you have the Rolodex of permits wherever you go reduces it to a second-class right which votes with the Supreme Court. Well, no, it doesn't. It just says if you want to go into Minnesota, you've just got to follow the Minnesota permitting process. Minnesota doesn't limit the permitting process only to residents, do they? They do not, Your Honor. But if the permitting process has the same requirements of all other states, short of the training thing, which states on this list do and sometimes do and don't, then what's the difference if you've already proven yourself to be a law-abiding citizen? We're not saying that you can't require a permit. The Supreme Court has never said that that is in and of itself the law that permits are in and of themselves constitutional. But they've seemed to indicate that. But once you have one, if you look at footnote 9 on page 38 of Bruin, it seems to be the standard for the Second Amendment, and we're talking about shall issue licensing regimes, under which there is a, quote, general desire for self-defense sufficient to obtain a permit. And because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent law-abiding responsible citizens from exercising their Second Amendment right to public carry. And then it goes into what makes a valid Second Amendment law and an invalid one. And what the difference is, let's see, so the licensing statute and the reciprocity statute are as different as daylight and dark, in my view. One is constitutional because it has narrow, objective, definite standards. If you meet all the criteria, the age, fill out the form, you're not on the gang list, you do the training, you are not otherwise eligible under state or federal law, you pass the background check, you get it. But the other is arbitrary and capricious because it allows government officials to go to the appraisal of facts, the exercise of judgment, and the formation of opinion, which is just like New York standard, which was declared unconstitutional. And we've seen, let's see, now, in the way they've administered this, especially, pardon me, Your Honor, I kind of lost my train of thought here, and we've seen this arbitrary and capricious nature of the reciprocity statute play out when Minnesota is compared to other states, especially the states the government discussed with the district court. I mentioned Texas earlier. It was added, the government told the district court, it was added to the reciprocity statute list after Worth, but Texas requires citizens to be 21 years old before they get the license. The government says Mr. Johnson should just get an Illinois, South Dakota, Kentucky, or New Mexico license online because they're on Minnesota's reciprocity list, but a few things about that. Minnesota and Georgia already have reciprocity with Kentucky and South Dakota, and Florida is also on, New Mexico is also on Florida's reciprocity list. Non-residents cannot get a license in Kentucky, New Mexico, or South Dakota, so that only leaves Mr. Johnson with Illinois, and Illinois only allows people from out of state to get a license if their laws in that other state are substantially similar, quote-unquote, and then I tried to find a list in Illinois for substantially similar states, and I went to the State Firearm Services Bureau website, and there's a little link for non-residents, and the pop-up screen says see the list below, but then there is no list. And it should be noted that Kentucky, Texas, and South Dakota are all constitutional carry states, but they're apparently, quote-unquote, similar to Minnesota. So in footnote 9 there, which talks about how shall issue regimes are presumptively constitutional, even though they haven't officially said that, it also lays out what's unconstitutional, and that is the characteristics of the reciprocity statute. Under Minnesota's reciprocity law, everyone without an unrecognized firearm permit must unload their weapon and place it in a container once they enter the state. There is no judicial finding that these people are a danger to the public. The law deems that they are too dangerous to be armed not because of their lack of a permit, but because Minnesota does not recognize their permit. The district court held this was just like historic surety laws, and therefore constitutional, but Bruin and Rahimi explained at length that a court had to find an individual It sounds like what the appellant complains about here is that he has to, in his situation, he has to get a permit, apply for a permit in Minnesota, and undergo the background check and comply with all the requirements that a Minnesota resident would have to Would you agree with that? That at base, that's his complaint? Well, I think he has a little bit more of a burden, I shouldn't say little, a great deal more of a burden than a Minnesota resident. As a long-haired truck driver, he could be anywhere in the United States at any given moment, and so he would have to take time off work and travel to Minnesota and apply, and then disarm once he enters the state, then wait 30 days for it to be sent back to his home in Florida, which he may have to take more time off to go back home and get. So that's what a Minnesota resident has to do? Well, a Minnesota resident is already in Minnesota. Presumably, they would have a much easier burden getting their license in the mail at home without having to take time off to go get it at the sheriff's office, Your Honor. So that's the real complaint, that he has to may have to travel to Minnesota? No, Your Honor, the real complaint is his Second Amendment rights are being treated like a second-class right. That he's already got established in two different states to be a law-abiding citizen, and now he has to do it in a third. I mean, there's no other right in the Constitution that requires this. I mean, you don't have to have a license for your free exercise of religion, your speech, your petition, your assembly in the First Amendment. Search and seizure doesn't require you to have a permit to get those privileges. Self-incrimination doesn't require you to have a license and the right to counsel. The prohibition against cruel and unusual punishment, you don't have to get a permit to have that. You don't have to have slavery. The Equal Protection Clause, due process. I mean, to have a license wherever you go reduces the Second Amendment to a second-class status. Especially after he's already proven twice to two different jurisdictions to be a law-abiding citizen. And when the Supreme Court says you don't have to be a law-abiding citizen, then you get to have your right to carry in public. It's much like Ronald Reagan's trust but verified. You get the right, and he's already verified that he is a law-abiding citizen in two different states. Mr. Morrison, isn't the real source of the burden on your client's Second Amendment rights originating from the Minnesota Permit Statute rather than the Reciprocity Statute? And wouldn't that be challenged in an as-applied challenge to the permitting statute? I don't think so, Judge, because it is the Reciprocity Statute that burdens his rights. And my yellow light is on right now. If I may just finish answering your question, then we'll reserve time for rebuttal. It's not anything in the licensing thing. That has standards of who gets a license. The Reciprocity Statute, it's because his status is not on the list that prevents him from being able to have his gun in public. But isn't the permitting statute the statute that requires him to go all the way from Georgia to Minnesota to get a permit in person? That's one way of looking at it, but what keeps him from having his gun is that one and the other. The other being the Reciprocity Statute because they do not put his states, both of them, on the list. And the standard similar laws, which my briefing holds is very arbitrary and capricious, it just doesn't make any sense and it burdens his Second Amendment rights. Thank you. All right. Thank you, Counsel. For the appellee, you may proceed. Thank you. Good afternoon, Your Honors. Good afternoon, Counsel. May it please the Court. My name is Madeline DeMell, and I'm an Assistant Attorney General for the State of Minnesota, and I represent the Commissioner of Public Safety. This case can be resolved on two grounds. First, Minnesota's reciprocity provision and underlying permit requirement are constitutional, so the District Court properly dismissed this lawsuit. The reciprocity provision simply helps people, Minnesotans and non-Minnesotans alike, comply with Minnesota's lawful permit requirement. Second, appellant's belated attempt to conjure up a new vagueness claim on appeal is improper and barred under this court's forfeiture jurisprudence. I would like to start with just a couple of high-level principles that were ventilated during my colleague's colloquy with Your Honors. The first and most important principle is that the Second Amendment does not require Minnesota to make it easier for out-of-state residents to get a firearm license than it is for Minnesotans. Can it make it more difficult? Pardon? Can Minnesota make it more difficult? Your Honor, I think that would be a question for a claim other than the Second Amendment. Claims that sound, for instance, in equal protection, privileges, and immunities, so forth. Appellant has not raised any of those claims here. Currently, Minnesota recognizes permits issued by about 33 states under its reciprocity statute. What if it recognized none? Would the statutory scheme still survive constitutional scrutiny? Yes, Your Honor, it would. In fact, appellant concedes that it would. This is not in the record, but just as I was preparing for argument, a review of public licensing information from other states. There are a number of states that do not offer any reciprocity for other states' licenses. And I do want to put a fine point on this. These states do not prohibit nonresidents for applying for that state's permit. And that, I think, could pose a bit of a problem. But that is not what is at issue in Minnesota's law. And to make that point clear, I would refer the court to the, I believe it's the Northern District of California's decision in California State Rifle and Pistol Association, which is a case that we've cited in our briefs. In that case, California not only refused reciprocity to out-of-state licenses, it also prohibited non-California residents from obtaining a California license. Now, those out-of-state folks, when they came to California, it appears they truly were left with no method for exercising their Second Amendment rights. Not so here. Appellant and others like him have an avenue to do that. And that is under Minnesota's constitutional shall-issue permitting scheme. Would you agree, Counsel, that it's more burdensome for someone from Georgia to have to travel to Minnesota to get an in-person permit than it is for a Minnesota resident to get a permit? Two thoughts on that, Your Honor. In a very superficial sense, yes, it could be. It depends, of course, on the circumstances of the individual. Perhaps there's an individual from Georgia who is retired, has all the time in the world, they can come here and go through the permitting process, just like any Minnesotan. In fact, unlike a Minnesotan, they can apply in any one of Minnesota's 87 counties, while Minnesota residents must go only to their county of residence. But there is a 30-day period right now. In Bruin, the Supreme Court cautioned against licensing regimes that had lengthy waiting times, and it referred to them as potentially abusive licensing regimes. What about the 30-day wait? After he travels all the way from Georgia, he's got to stay up to 30 days at his own expense in Minnesota before he can exercise his rights. Your Honor, that's not an issue for two reasons. First, that would only be a basis for an as-applied challenge to the statute, and as Your Honor noted— And which statute? To the permitting statute. That isn't going to fly here because, A, appellant has already conceded its constitutionality. B, appellant—the district court found that appellant did not bring an as-applied challenge. That is at pages 90 to 91 of the joint appendix. Appellant did not appeal that issue, and so the nature of his challenge is forfeited. But even on the merits, Minnesota's—the status of Minnesota's permitting scheme is a far cry from the sort of potentially abusive situations that I think the Supreme Court was talking about in Bruin. I would, on this point, refer the court to a number of cases—Maryland Shell Issue v. Moore, Marquis v. Massachusetts, and again, the California case. Now, the Supreme Court hasn't set a line, and lower courts really haven't either. They've sort of done the, we don't know where the line is where it starts becoming abuse, but we know where it isn't. We also know what's across it. The one court that has found something to cross that line is the California decision, a waiting period where plaintiffs allege they've been waiting for up to 18 months for a permit. Thirty days is nothing close to 18 months. The Fourth Circuit, in an en banc, cert was denied decision. Thirty days was approved. That may be, but let me ask this. Could the state of Minnesota require someone wishing to exercise their First Amendment rights, perhaps through a public demonstration? Could they make them wait 30 days before they could exercise their First Amendment rights in Minnesota? Your Honor, depending on the nature of that restriction, if it passed what sounds like the applicable, I think the applicable test would be time, place, or manner. If it passed that test, there may be some instances in which administrative preconditions on a fundamental right like speech could be constitutionally sound. You don't think for 30 days, do you? It's difficult to think of a time when 30 days would be appropriate. Doesn't that indicate that Minnesota's treating the Second Amendment as a second class right? It doesn't, Your Honor. First of all, I want to be precise. The waiting period in Minnesota is not a minimum. That is basically a max amount of time that the state has, so certainly they may be able to get to these applications in three days or 13 days. Here, appellant has not even tried to apply, so we have no allegations on that front. More fundamentally, there's not the same sort of infringement, I think, that at issue in a circumstance like that than has been at issue in cases like Bruin, Heller, Rahimi. In all of those cases, the law that was at issue was akin to a categorical ban, a full ban. You are disarmed. No exceptions. Rahimi, it was during the pendency of the sentence for the underlying criminal conduct with the May issue regime in Bruin. The court described that as a functional or a de facto ban on carrying outside the home. That's not the case here. People can carry freely once permitted in Minnesota. The only type of, and I hesitate to say disarmament, the only thing that is really happening is a brief administrative processing delay. Courts like the Fourth Circuit and the Fifth Circuit have held that that is not an infringement in the constitutional sense. It's sort of the necessary logistical grist that makes permit laws work in practice. Bruin itself says that those sorts of regulations are okay. Of course, the footnote that we've cited and discussed, but I also want to point the court to a quote from page 38. Throughout modern Anglo-American history, the right to keep and bear arms in public has traditionally been subject to well-defined restrictions. These are not categorical prohibitions, but restrictions governing the intent for which one could carry, the manner of carry, and exceptional circumstances under which one could not carry arms. Bruin really does contemplate that states can and will implement the sort of shell issue licensing regimes that were carved out from the majorities holding. In that case, the administrative preconditions are just, again, sort of the logistical grist that makes those regimes work in practice. Of course, there is always a risk of abuse. Certainly, appellant has not alleged any facts consistent with that here. It is our position that that's not the case. That type of challenge is forfeited, all the rest. But absent that sort of abuse, these types of laws are presumptively constitutional. And the permitting law, not the reciprocity provision, really is where the center of gravity in this case is. As Your Honor asked, Judge Graz, if the reciprocity provision went away, the permit requirement would still be there. That would still be a hill that appellant has to climb. And under Bruin, appellant simply cannot. I would like to put one fine point in addition on exactly the sort of relief that appellant is asking for, because I think that is important to really understand the dispute between the parties. Appellant says it's all about the reciprocity provision. Our position is that, as I just said, the center of gravity really does live at the fact that Minnesota requires a permit rather than no permit at all. And to help flesh out how the court should resolve that dispute between the parties, I would point the court to page 23 of appellant's complaint. In the prayer for relief, paragraph B, appellant requests an order declaring that defendant must recognize and honor lawfully issued firearm permits issued from all other states, regardless of whether the permit holder is a resident of Minnesota. So, functionally, what appellant is asking this court to do is force Minnesota to forego its own permitting requirements and accept the permit requirements of any and every other state to impose nationwide reciprocity. The result of that is, right now, you know, perhaps the reciprocal permit laws that appellant is pointing to look at least in the same neighborhood, if not identical to Minnesota's. But what happens when one of those states dramatically changes or lessens the requirements for getting their permits? If Minnesota is bound to recognize a permit issued after only very minimal requirements are met in another state, that really undermines Minnesota's interests. It undermines the Supreme Court's holding in Bruin that validated state's entitlement to enact precisely the sort of law that Minnesota has enacted here. And for that reason, and all of the reasons I've discussed, we ask that this court affirm the dismissal. Neither the reciprocity provision nor the permitting law that underlie it are unconstitutional. Both are consistent with the Second Amendment, with the Supreme Court's interpretation of the same in Bruin, and the dismissal should be upheld. The panel does not have any further questions. I'm happy to rest, but if there are further questions, I would be happy to address those. Okay, I think there are no further questions. Thank you for your argument. Mr. Morrison, take a minute, one minute, for your rebuttal. Your Honor, I think opposing counsel really said the unspoken hypothetical, the unspoken concern, and that's a race to the bottom. But the court needn't worry about that because the laws are already on the books. And all, just like Minnesota, they all have a background check, all shall issue, state and federal law, you've got to be able to have them, some have trans, some don't. Now, these states have constituencies as well, and nobody wants to be the easiest place to get a gun. Like you give it, handed it to you, like some states handed basketballs, footballs at birth, nobody's going to hand a weapon to any child at birth. But these are Second Amendment rights, and they go with you wherever you go. States will not race to the bottom because they have an answer to their own electorate and different politics going on there. And if that does happen, Minnesota can bring its own action to say, hey, we do not want to recognize this thing, we don't think we have to under the Second Amendment. But until these people are proven to be unworthy of their ordinary law-abiding citizen status, they should be able to have their Second Amendment rights wherever they go. That's proven by their permit. Very well. Thank you, counsel, for your arguments. The case is submitted. The court will render a decision in due course. Thank you again for participating by video today. I'm glad we were able to conduct our oral argument on the date scheduled, at least. And I'm sorry that the travel problems interfered. It's all mine. Thank you, Judge. All right. Is there anything else that we need to take up this afternoon? That is all, Your Honor. Very well. We'll stand adjourned until 8.30 in the morning.